UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

GAIL F.,[1]

                                           Plaintiff,             Case # 21-CV-120-FPG

v.                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
───────────────────────────────────────

## INTRODUCTION

Plaintiff Gail F. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 15. For the reasons that follow, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

In May 2018, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 118. She alleged disability since October 2017. Tr. 119. On March 27, 2020, Administrative Law Judge Christina Young Mein ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 16-27. On November 24, 2020, the Appeals Council denied Plaintiff's

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I. The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has several severe impairments,

including a right rotator cuff tear status-post repair with degenerative changes. Tr. 19. At step three, the ALJ found that her impairments do not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Plaintiff retains the RFC to perform a reduced range of light work. Tr. 20. At step four, the ALJ found that Plaintiff could perform past relevant work. Tr. 25-26. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

## II. Analysis

Plaintiff argues that remand is warranted because, *inter alia*, the ALJ's findings with respect to her abilities to lift and to carry were unsupported by substantial evidence. Because the Court agrees, it need not address Plaintiff's other arguments.

Plaintiff is right-handed. Tr. 43. In October 2017, Plaintiff sought treatment for right shoulder pain from which she had been suffering over the prior year. Tr. 286. Plaintiff was diagnosed with a tear in her right rotator cuff, and she underwent surgery on October 27, 2017. Tr. 300. In January 2018, Plaintiff slipped on ice and sustained additional trauma to her right shoulder. Tr. 384.

In February 2018, state agency consultant C. Krist, D.O., opined that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. Tr. 125. In April 2018, Plaintiff's treating physician, Patrick Hlubik, M.D., opined that Plaintiff could return to work with a "2 pound lifting restriction to chest level and no overhead activity with regards to [Plaintiff's] shoulder." Tr. 403. In July 2018, Plaintiff met with consultative examiner Hongbiao Liu, M.D. Tr. 501. After an examination, Dr. Liu opined that Plaintiff had "mild to moderate limitation[s]" with respect to lifting, carrying, and overhead reaching with the right hand. Tr. 504. In February 2019, state agency consultant Jay Shaw, M.D. reviewed Plaintiff's medical records

and concluded that she could occasionally lift up to twenty pounds and frequently lift up to ten pounds. Tr. 528.

In March 2019—after Plaintiff continued to complain of right shoulder pain—Plaintiff underwent a right shoulder arthroscopy and rotator cuff repair. Tr. 543, 553. In August 2019, Dr. Hlubik opined that Plaintiff could return to work, except that she could not lift over 5 pounds or engage in overhead activity. Tr. 705.

On March 9, 2020, the ALJ conducted a hearing. Tr. 36. At the hearing, Plaintiff testified that she cannot lift "more than three to eight pounds" with her right arm. Tr. 48. Her right shoulder hurts "all the time," and the pain is aggravated by lifting "anything heavy." Tr. 55. Plaintiff stated that she can do "[v]ery little" grocery shopping and that her ability to do chores is limited. Tr. 51. For example, Plaintiff does not vacuum because she "can only use it with [her] left arm." *Id.* When she goes to the grocery store, Plaintiff can "lift a gallon of milk weigh[ing] eight pounds" and quickly move it to her cart, but she cannot "pick it up over [her] head." Tr. 58. Plaintiff testified that she avoids moving her right arm "too much" during the day, Tr. 63, and that Dr. Hlubik has continued to advise her not to lift "more than five pounds." Tr. 58.

On March 23, 2020, Plaintiff met with Dr. Hlubik to evaluate her right shoulder pain. Tr. 33. Dr. Hlubik continued to recommend that Plaintiff be restricted to no lifting over 5 pounds and no overhead activity. Tr. 35. He also opined that those limitations "will be permanent restrictions." *Id.* This treatment note was not provided to the ALJ prior to her decision.

On March 27, 2020, the ALJ issued her decision finding that Plaintiff is not disabled. As to Plaintiff's RFC, the ALJ determined that Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently when using both hands, but 10 pounds with only the right hand." Tr. 20. The ALJ found the opinions of Dr. Krist and Dr. Shaw persuasive, as they were consistent

with the diagnostic imaging, clinical findings, and Plaintiff's activities of daily living. Tr. 24. However, the ALJ found Dr. Hlubik's opinions regarding Plaintiff's work restrictions unpersuasive. Based on her review of the treatment notes—and without the benefit of Dr. Hlubik's March 23, 2020 treatment note—the ALJ concluded that Dr. Hlubik's work restrictions were intended to be "temporary restrictions" in the immediate aftermath of Plaintiff's surgeries. *Id.* Regardless, the ALJ found those restrictions inconsistent with Plaintiff's "clinical findings showing full 5 out of 5 strength in her upper extremities and no muscle atrophy" and with Plaintiff's "activities of daily living, which include cleaning, folding laundry, grocery shopping, and vacuuming." *Id.* Finally, the ALJ found Dr. Liu's opinion "generally persuasive," since the exertional limitations that he identified were consistent with Plaintiff's "surgical history, diagnostic studies, clinical findings, and activities of daily living." Tr. 24-25.

Plaintiff argues that the evidence on which the ALJ relied did not constitute "substantial support for the RFC finding[s]" related to her abilities to lift and carry. ECF No. 14-1 at 24. The Court agrees.

Specific limitations included in an RFC, like the RFC as a whole, "must be based on evidence in the record, not on an ALJ's own surmise." *Wouters v. Comm'r of Soc. Sec.*, No. 19-CV-610, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020). Thus, where an ALJ includes a highly specific exertional limitation, he must have an evidentiary basis for it. A medical opinion, a claimant's testimony, or information contained in the medical records can oftentimes be sufficient to support a given exertional limitation. Furthermore, an ALJ is not limited to adopting only those limitations explicitly identified in the record: he is free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations. *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *4

(W.D.N.Y. Apr. 4, 2019) ("[W]hen the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation."); *see, e.g.*, *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order) (evidence supported the ALJ's finding that claimant could perform light work at "no more than 10% slower than average [pace]," notwithstanding that no evidence identified a "particular percentage range"); *Barone v. Comm'r of Soc. Sec.*, No. 19-CV-482, 2020 WL 3989350, at *5 (W.D.N.Y. July 15, 2020) (collecting cases); *cf. Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (noting that an ALJ's conclusions need not "perfectly correspond with any of the [medical] opinions"). Unless "a reasonable factfinder would *have to conclude otherwise*," the district court must defer to the ALJ's factfinding. *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order).

Conversely, however, the Court's deferential review does not give an ALJ the license to arbitrarily craft functional limitations, *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (where some evidence showed "total loss of function" to claimant's hand and other evidence showed no loss, the ALJ could not split the difference and conclude that claimant had "fifty percent capacity"), translate raw medical data into functional terms, *McKee v. Comm'r of Soc. Sec.*, No. 18-CV-1013, 2020 WL 1283884, at *4 (W.D.N.Y. May 18, 2020), or unreasonably draw highly specific inferences from the nonspecific evidence. *See, e.g.*, *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (ALJ erroneously inferred from examiner's report—which stated that claimant would require "regular comfort breaks"—that claimant would need to "take a six-minute break every hour"). Moreover, an ALJ's reasoning must always be "sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Moss*

*v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020). While an ALJ's analysis need not be fully explicit in every detail, a reviewing court must be able to "glean the ALJ's rationale from the record." *Dyana G. v. Comm'r of Soc. Sec.*, No. 19-CV-805, 2021 WL 465249, at *3 (W.D.N.Y. Feb. 9, 2021). Accordingly, with respect to a specific exertional limitation, the ALJ must tether the limitation to competent evidence and must provide a sufficient explanation to ensure "meaningful judicial review." *Moss*, 2020 WL 896561, at *3.

In this case, the Court is unable to discern how the ALJ arrived at the lifting/carrying limitations she identified. The ALJ concluded that (a) "when using both hands," Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently," but that (b) when using "only the right hand," Plaintiff can lift "10 pounds."[3] Tr. 20. The former limitation is arguably supported by the opinions of the state agency consultants, who both opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. *See* Tr. 125, 528. It is also arguably supported by the opinion of consultative examiner Dr. Liu, who opined that Plaintiff was mildly to moderately limited in her abilities to lift and to carry. *See* Tr. 504; *see also Edward M.C. v. Comm'r of Soc. Sec.*, No. 20-CV-644, 2021 WL 3032692, at *5 (N.D.N.Y. July 19, 2021) (collecting cases for the proposition that a "mild limitation in the abilities to lift and carry [has] been considered to be consistent with an ability to perform at least light work"); 20 C.F.R. § 404.1567(b) (listing the exertional demands of light work).

By contrast, the Court cannot discern how the ALJ arrived at the latter limitation. The Commissioner concedes that the ten-pound restriction for Plaintiff's right arm is *more* restrictive than that assessed by Dr. Liu, Dr. Shaw, or Dr. Krist. *See* ECF No. 15-1 at 13. But it is also *less* restrictive than the limitation as identified by Dr. Hlubik (who opined that Plaintiff could only lift

---

[3] The ALJ did not articulate whether Plaintiff can frequently, occasionally, or continuously lift ten pounds when using only her right hand. *See* Tr. 20.

up to five pounds, Tr. 705) and Plaintiff (who testified that she could, for a very short duration, lift up to eight pounds, Tr. 48, 58). The ALJ failed to articulate how, without the support of any medical opinion, she concluded that Plaintiff could lift up to ten pounds with her right arm. The Commissioner cites no evidence from which the ten-pound restriction for right-arm lifting could be reasonably derived, instead arguing that the ALJ "synthesized" the record evidence to construct the RFC. ECF No. 15-1 at 13. Nevertheless, the ALJ's discretion to "synthesize" the record to determine a claimant's RFC does not obviate her responsibility to provide a sufficient rationale to ensure meaningful judicial review.

Furthermore, the ALJ's treatment of Dr. Hlubik's opinion is confusing. The ALJ purported to reject Dr. Hlubik's opinion as "temporary" and as unpersuasive in light of Plaintiff's activities of daily living and clinical findings of full strength with no muscle atrophy. Tr. 24. That rationale would seem to justify rejecting not only Dr. Hlubik's view on Plaintiff's lifting ability but also his opinion that Plaintiff cannot engage in any "overhead activity." *Id.* Yet the ALJ proceeded to find that Plaintiff cannot reach overhead, a restriction that only Dr. Hlubik identified. *See* Tr. 20. While an ALJ is free to credit only portions of a medical source opinion, the ALJ must explain her reasons for doing so. *See Caternolo v. Astrue*, No. 11-CV-6601, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." (internal quotations omitted)). Here, the ALJ did not even acknowledge that she credited Dr. Hlubik's opinion in part, let alone sufficiently explain why she accorded his opinion partial credit.

Ultimately, the lack of a discernible rationale for the ALJ's RFC findings prevents the Court from conducting a meaningful review and justifies remand, as it raises the specter that the ALJ arbitrarily constructed the RFC or "interpreted the medical evidence based on her own lay

judgment—both of which constitute error." *McGirr v. Comm'r of Soc. Sec.*, No. 19-CV-1004, 2020 WL 3467416, at *2 (W.D.N.Y. 2020).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 12, 2022
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York